UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IKEE HALE,                                          :

                 Petitioner,        :        **MEMORANDUM DECISION**

        - v -                          :        18-CV-04920 (DC)

JAMIE LAMANNA,                                :

               Respondent.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:       IKEE HALE
                         Petitioner *Pro Se*
                         DIN 12-A-4087
                         Green Haven Correctional Facility
                         Stormville, NY  12582

                         ERIC GONZALEZ, Esq.
                         Kings County District Attorney
                         By:    Leonard Joblove, Esq.
                                 Michael Brenner, Esq.
                                 Michael Bierce, Esq.
                                 Assistant District Attorneys
                         350 Jay Street
                         Brooklyn, NY  11201-2908
                             Attorney for Respondent

CHIN, Circuit Judge:

       In 2012, following a jury trial, petitioner Ikee Hale was convicted in the

Supreme Court of the State of New York, Kings County (Firetog, *J.*), of one count of

murder in the second degree and one count of criminal possession of a weapon in the second degree. Dkt. 19 at 17. On August 28, 2012, Hale was sentenced to, *inter alia*, concurrent terms of imprisonment of twenty-five years to life on the murder count and fifteen years on the weapons possession count. *Id*. at 18. His convictions were unanimously affirmed by the Appellate Division, Second Department. *See People v. Hale*, 39 N.Y.S.3d 484 (2d Dep't 2016) ("*Hale I*"). The New York Court of Appeals denied Hale's application for leave to appeal on January 17, 2017. *See People v. Hale*, 74 N.E.3d 682 (N.Y. 2017) ("*Hale II*") (Fahey, J.).

In March 2018, Hale filed, *pro se*, a motion in the Supreme Court, Kings County, to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10, alleging ineffective assistance of counsel and a *Brady* violation. Dkt. 19 at 20. In 2019, the court denied the motion on the merits, in its entirety, and without a hearing. *Id.* Hale then sought leave to appeal to the Second Department, which denied leave in 2019. *Id.* at 21.

In August 2018, proceeding *pro se*, Hale filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. Dkt. 1. The proceedings were stayed for a period of time for Hale to pursue his Section 440 motion. In July 2020, Hale informed the district court that his state proceedings had been completed. Dkt. 16. Hale filed an amended petition (the "Petition") on May 7, 2021, Dkt. 18, and the Kings County District Attorney's Office filed its opposition on June 29, 2021. Dkt. 19-1. Hale

filed a traverse on January 7, 2022.  Dkt. 23.  The case was reassigned to the undersigned

on May 12, 2023.  Dkt. Sheet at 6.

For the reasons that follow, the Petition is DENIED.

## STATEMENT OF THE CASE

**A.    *The Facts*[1]**

The evidence at trial established the following:

On September 3, 2009, Hale was drinking with his then girlfriend, Indhira

Devers, and Matthew Campbell in front of 130 Moore Street in Brooklyn.  Dkt. 19 at 6.

After Hale and Campbell got into an argument, Hale and Devers left and went to an

apartment at 130 Moore Street.  *Id.* at 6.  When they came back out, Hale told Devers to

wait in front of the building while he went "out the back" of the building.  *Id.* at 6-7.

Approximately two minutes later, Hale fired a gun at Campbell.  *Id.* at 7.

Campbell, angered that Hale had shot at him, immediately went to the

apartment of his friend Larry Tucker in search of a gun.  *Id.* at 7-8.  Tucker, who kept a

handgun in his closet, refused to give Campbell the gun, and told him to talk it out with

Hale.  *Id.* at 7.  They then searched for Hale, spotting him shortly after, standing in front

of 130 Moore Street.  *Id.* at 8.  Tucker decided to approach Hale alone because Campbell

---

[1]      The facts are drawn from the Respondent's Affirmation Opposing Petition for a Writ of
Habeas Corpus, Dkt. 19, as well as the People's brief to the Appellate Division in opposition to
Hale's appeal, Dkt. 19-1.  Both contain detailed recitations of the facts, supported by citations to
the record, including the testimony of the witnesses.

was so agitated.  Hale told Tucker that he just wanted to talk to Campbell, and a few

minutes later, Campbell walked up behind Tucker.  *Id.* at 8.  Campbell told Hale he was

not carrying a gun, lifting up his shirt to prove the absence of a gun.  *Id*.  He then said,

"Let's fight."  A friend of Campbell, known as "J.J.," passed an object to Hale, which

turned out to be a .380 semi-automatic pistol.  *Id.* at 8-9.  Campbell then pushed Tucker

out of the way and began to tussle with Hale in an attempt to take the handgun away

from him.  *Id.* at 9.  During the altercation, Hale fired the gun into Campbell's chest.  As

Campbell started to run away, Hale fired a second shot that hit Campbell in the buttock.

*Id.* at 9, 11.  Campbell then ran to a playground, where he collapsed.  *Id.* at 9-10.  Tucker,

who had followed Campbell, called 911.  *Id.* at 9.  Hale and Devers initially fled to a

nearby apartment building but later went to a hotel in Manhattan.  *Id.* at 10.

Campbell, who was not moving when found by the police, was picked up

by an ambulance but pronounced dead shortly thereafter.  *Id.* at 10-11.  Campbell had

been shot in the lower left chest and left buttock.  On February 3, 2010, Hale was

arrested, and Devers identified him in a lineup.  Dkt. 19 at 12.

B.   *Procedural History*

1.   *State Court Proceedings*

a.   *The Trial Court Proceedings*

In 2012, Hale was indicted in Supreme Court, Kings County, on one count

of murder in the second degree and one count of criminal possession of a weapon in the

second degree.  Dkt. 19 at 2.

On January 27, 2012, the prosecution moved *ex parte* for a protective order

to delay the release of information about three likely witnesses until the morning of the

trial.  *Id.*  The witnesses were Tucker, Devers, and Theresa Jackson, who had seen Hale

and Campbell arguing the night of the shots.  *See id.* at 5-6.  The prosecution argued

that, based on phone calls from jail during which Hale attempted to identify potential

witnesses, there was a serious risk of witness tampering.  *Id.* at 3.  Hale had also reached

out directly to Jackson to ask her to change her account of the shooting, even offering to

help pay for counsel if she was charged with perjury.  *Id.*  Based on Hale's behavior and

lengthy criminal history, the trial court granted the prosecution's application.  *Id.; see*

*also* Dkt. 19-2.

On February 1, 2012, just before *voir dire*, defense counsel raised a

potential violation of *Payton v. New York*, 445 U.S. 573 (1980), which held that law

enforcement may not enter a suspect's home without consent or a warrant.  *See United*

*States v. Alexander*, 888 F.3d 628, 635 (2d Cir. 2018); *see also* Dkt. 19-5.  Defense counsel

alleged that Hale had been arrested without a warrant at his girlfriend's house, which Hale claimed to have often visited.  Because the court concluded that Hale had merely been a guest at the house, it found no *Payton* violation.  Dkt. 19 at 5.

Defense counsel also raised the issue of whether Jackson's statement that she heard Campbell's friend talking about getting a "blick" (that is, a gun) was potentially exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963).  Dkt. 19 at 6.  The court denied the motion, holding that her statement was not exculpatory and that a transcript of the conversation had previously been turned over, although the word "blick" was depicted as "inaudible" in the transcript.  Dkt. 19 at 6, 13-15.

Trial commenced on February 2, 2012.  Dkt. 19 at 6.  The People called the eyewitnesses discussed above, as well as Hale's girlfriend, Venus Kellem Thomas, law enforcement officers who testified about the investigation, and medical personnel who testified about the victim's injuries.  The defense called one witness, Detective Kenneth Wieber, who testified that he had written in his police report that Tucker had met Hale in front of 140 Moore Street, even though he had written 130 Moore Street in his notes. He acknowledged the inconsistency but maintained the report, rather than the notes, was accurate.  *See id.* at 12.

On February 15, 2012, the jury found Hale guilty of second-degree murder and second-degree weapons possession.  *Id.* at 17.

Before sentencing, Hale moved *pro se* and through counsel to set aside the

verdict under N.Y. Crim. Proc. Law § 330.30. The court denied the motion in a written

decision. *Id.* at 18; *see also* Dkt. 19-6.

On August 28, 2012, the court sentenced Hale to concurrent prison terms

of twenty-five years to life imprisonment for murder and fifteen years for weapon

possession. The court also imposed a five-year term of post-release supervision. Dkt.

19 at 18.

### b.    *The Direct Appeal*

Hale appealed the conviction and sentence to the Appellate Division,

Second Department, via both a counseled brief and a *pro se* filing. Broadly speaking, he

raised four claims: (1) his due process rights were violated by a number of the trial

court's rulings; (2) he was denied effective assistance of counsel and the court abused its

discretion by denying his motion for new counsel; (3) the prosecutors violated *Brady*

when they failed to timely disclose Jackson as a witness; and (4) his sentence was

excessive. Dkt. 19 at 18-19.

On October 19, 2016, the Appellate Division unanimously affirmed the

convictions and sentence. *See Hale I*, 39 N.Y.S.3d at 484. The court rejected the claim

that the trial court improperly permitted the prosecution to move *ex parte* for a

protective order to delay the disclosure of the identity of certain witnesses. *Id.* The

court also concluded that the prosecution did not violate *Brady* by failing to disclose

Jackson's identity "as there was no reasonable possibility that such nondisclosure affected the outcome of the trial." *Id.* at 485. The court further held that the guilty verdict was not against the weight of the evidence. *Id.* Regarding the ineffective assistance claim, the court stated that "it is not evident from the matter appearing on record that the defendant was deprived of the effective assistance of counsel" and, because Hale's claim would require an examination of matters outside the record, "a [Crim. Proc. Law §] 440.10 proceeding [would be] the appropriate forum for reviewing the claim in its entirety." *Id.* The court further held that "[t]he sentence imposed was not excessive." *Id.* Finally, the court concluded that defendant's remaining contentions, "including the remaining contentions raised in his *pro se* supplemental brief," were meritless. *Id.*

Hale's appellate counsel applied for leave to appeal to the Court of Appeals. By order dated January 17, 2017, Hale's application was denied. *Hale II,* 74 N.E.3d at 688.

c.   *Section 440 Motion*

In March 2018, Hale filed a *pro se* motion to vacate his conviction under N.Y. Crim. Proc. Law § 440.10. On March 15, 2019, the Supreme Court, Kings County denied the Section 440 motion in its entirety, including the ineffective assistance claim. Dkt. 19-24. The court found that "a review of the record establishes that, completely contrary to the arguments advanced by defendant, trial counsel conducted a proper

8

investigation prior to trial [and] the record as a whole demonstrates that the defendant was not deprived of the effective assistance of counsel." Dkt. 19-24 at 4.  Hale sought leave to appeal to the Second Department, which was denied.  Dkt. 19 at 21.

     2.    *Habeas Petition*

In August 2018, Hale filed his initial habeas petition *pro se.*  Dkt. 1.  Upon his request, the proceedings were stayed, beginning in October 2018, so that he could exhaust his claims in state court.  Dkt. 19 at 21.   After some additional motion practice, Hale ultimately filed the Petition on May 6, 2021.  Dkt. 18.

The case was reassigned to the undersigned on May 12, 2023.  Dkt. Sheet at 6.

## DISCUSSION

**A.**    *Federal Review of State Convictions*

As a threshold matter, a federal court may not grant a habeas petition where the petitioner is in custody pursuant to a judgment of a state court unless the petitioner "has exhausted the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), or such process is unavailable or ineffective, *see id.* § 2254(b)(1)(B).

Moreover, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citation and internal quotation marks

omitted).  That is, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted).  Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York law governing a petitioner's failure to raise a claim on direct appeal "represent[] the application of a 'firmly established and regularly followed' New York rule." *Williams v. Goord*, 277 F. Supp. 2d 309, 318-19 (S.D.N.Y. 2003) (citations omitted).

Where a petitioner's claim was adjudicated on the merits in state court, a federal court may not grant a habeas petition with regard to that claim unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state court must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"

*Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam).

This deferential standard is higher still for habeas petitions alleging the ineffective assistance of counsel.  In general, to prevail on a claim of ineffective assistance, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable possibility" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  In the context of a habeas petition pursuant to 28 U.S.C. § 2254, however, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is "doubly" so." *Harrington*, 562 U.S. at 105 (citations omitted).  Therefore, "[t]he operative question" when a federal court reviews "a state court's *Strickland* ruling is thus not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)) (alteration adopted and internal marks omitted).

The standard to establish an ineffective assistance of counsel claim in New York is lower than under federal law. *See People v. Honghirun*, 78 N.E.3d 804, 807 (N.Y.

2017).  In New York, a defendant must show only "that counsel failed to provide

meaningful representation." *People v. Alvarez*, 125 N.E.3d 117, 120 (N.Y. 2019) (citing

*People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004); *People v. Baldi*, 429 N.E.2d 400 (N.Y. 1981)).

Unlike the federal standard, *see Strickland*, 466 U.S. at 694, the defendant is not required

to demonstrate that the ineffective assistance resulted in prejudice, *see Alvarez*, 125

N.E.3d at 120.

**B.     *Analysis***

In his petition, Hale raises four categories of claims, which I address in the

following order: (1) due process violations as to (a) the protective order regarding

Jackson and her potential testimony and (b) the request for more time to consult with

defense counsel about discovery material concerning Devers; (2) ineffective assistance

of counsel; (3) the *Brady* violations regarding Jackson and witness/travel expenses; and

(4) due process violations by the trial court for interrupting defense counsel's

summation and accusing counsel of misstating the record.[3]

**1.   *The Claims of Due Process Violations regarding Jackson and Devers***

Regarding his due process claims pertaining to Jackson, the Appellate

Division held that "[t]he Supreme Court providently exercised its discretion in

permitting the prosecution to make an ex parte motion for a protective order so as to

---

[3] Hale also includes one line asserting that his sentence was excessive but does not
provide any legal or factual arguments on that point in the Petition.  Dkt. 18 at 3.

delay the disclosure of the identity of certain witnesses." *Hale I*, 39 N.Y.S.3d at 484.

That ruling is entitled to deference and, in any event, is reasonable.

Hale raises a number of arguments regarding Jackson. To begin, he

argues that his due process rights were violated when the trial court did not allow him

or his defense counsel to participate in the protective order hearing. This argument

fails. First, the prosecutor properly applied for a protective order pursuant to New

York Criminal Prosecution Law §§ 240.50(1), 240.90(3).[4] *See* Dkt. 19-1 at 5. Considering

Hale's attempts to contact potential witnesses, it was reasonable for the trial court to

find good cause to issue a protective order. *See id.* For example, Devers testified that

Hale had told her not to testify against him. *Id.* at 9. Hale had also reached out to

Jackson to see if she could be persuaded to change her testimony. Second, Section

240.90(3) permits a party to move for a protective order *ex parte* or *in camera*, and a court

has discretion to conduct such proceedings outside the presence of the defense counsel

if "disclosure of a witness's identity would comprise the safety of [the witness]." *People

v. Frost*, 790 N.E.2d 1182, 1186 (N.Y. 2003). Here, the trial court did not abuse its

discretion in proceeding *ex parte*.

Hale also claims that knowing Jackson's personal information earlier in

the process would have given his counsel more time to identify and produce Jackson.

---

[4] On January 1, 2020, Article 240 of the Criminal Procedure Law was repealed as newly created Article 245 went into effect. Section 245.70 now governs protective orders and permits *ex parte* and *in camera* proceedings.

The court, however, adjourned the trial from February 9, 2012 to February 14, 2012 to allow defense counsel time to locate witnesses, including Jackson. *Id.* at 13-14. Jackson's inconsistent testimony and her unwillingness to speak to defense counsel further undermine Hale's argument that identifying her more quickly would have affected the outcome of the trial. *Id.* at 11. Jackson explicitly told a prosecutor that she had no interest in speaking to Hale, and at most would have testified that she overheard an associate of Campbell's talk about getting a gun. Dkt. 19 at 13-14. She also falsely told the prosecution that she had seen the shooting, further undermining her credibility. Dkt. 19-1 at 11. This would not have negated either the testimony by Tucker and Devers that Campbell was unarmed or Devers's eyewitness testimony that Hale shot Campbell twice, once while Campbell was fleeing. Dkt. 19 at 9.

Hale also complained that the protective hearing was not recorded, but there is no legal requirement that the protective order hearing be recorded. *See generally United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam); *Draper v. Washington*, 372 U.S. 487, 495-96 (1963). A state is only required to provide a "record of sufficient completeness" that allows for effective appellate review. *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971). Here, the record, including the prosecution's written submission in

support of its motion and the discussion about this issue during trial, was sufficiently complete to permit review of Hale's claim.  Hence, this claim is without merit.

Second, Hale argues that the trial court erroneously denied defense counsel's request for additional time to review discovery materials before cross-examining Devers.  Dkt. 19-1 at 12.  The granting of additional time is "traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  The trial court did not err in telling counsel that having Hale read the materials himself would not help his case as Hale was already familiar with the materials, which defense counsel acknowledged.  Dkt. 19-1 at 13.  Furthermore, the court gave defense counsel about half an hour to speak to Hale about what counsel planned to ask about on cross-examination. *Id.* at 13.  Thus, this claim does not provide a basis for habeas relief.

## 2. *The Ineffectiveness of Counsel Claim*

Regarding Hale's ineffective assistance of counsel claim, the Appellate Division found that it was not "evident from the matter appearing on the record that the defendant was deprived of the effective assistance of counsel." *Hale I*, 39 N.Y.S.3d at 485.  Furthermore, because his allegations of ineffective assistance involved matters both in the record and outside of the record, the court suggested that a Section 440.10 proceeding would be the "appropriate forum for reviewing the claim in its entirety." *Id.*

In the subsequent Section 440.10 proceeding, the court held that Hale had relied only on his "bald and conclusory self[-]serving affidavit . . . and trial counsel conducted a proper investigation prior to trial." Dkt. 19-24 at 3-4.  In particular, the court found that "a significant majority of the investigation had been complete prior to the reassignment of trial counsel." *Id.* at 4.

As previously noted, "the standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citations omitted).  Therefore, I must determine whether the court's determination was "objectively unreasonable." *Waiters*, 857 F.3d at 478 (quoting *Schriro*, 550 U.S. at 473) (internal marks omitted).  With these considerations in mind, and giving substantial deference to the state courts' decisions, *see Fischer*, 780 F.3d at 560, I address Hale's ineffective assistance claims.

First, Hale contends that his trial counsel was ineffective for failing to adequately prepare for the trial, including failing to adequately review his case file, consult with him, and adequately investigate evidence (such as by reviewing videos, interviewing witnesses, and listening to several recordings of jail phone calls).  Hale alleges these failures prevented him from testifying. Dkt. 19-1 at 17.  Specifically, he claims that counsel first contacted the court-appointed investigator, Kevin Hickson, on the day of the prosecution's opening statements, failed to review documents indicating the presence of surveillance cameras near the scene of the crime, and ignored Jackson's

redacted statement.  As a result, defense counsel failed to develop and present the

justification defense that Hale preferred.  *See id.* at 18; Dkt. 18-1 at 13-50.

In support of the claim that his counsel was inadequate, Hale also

presented a payment voucher that allegedly illustrated counsel's cursory review of the

case because the voucher only provided general descriptions of counsel's work.  Dkt.

19-1 at 18-19.  While it is difficult to draw conclusions about the level of counsel's

preparations based on a voucher, it appears that counsel spent approximately 159 hours

on the case.  Dkt. 19-30 at 19-26.  Furthermore, during the Section 440 proceeding, the

People also affirmed that by the time defense counsel was assigned the case, the

investigation was substantially complete.  The court determined that counsel spoke

"extensively" with the investigator about what steps he had taken, including searching

for another potential witness, J.J., as well as instructing the investigator to look for

Jackson.  Dkt. 19-1 at 20.

While counsel has a duty to "make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary," counsel need not

"investigate comprehensively every lead or possible defense."  *Greiner v. Wells*, 417 F.3d

305, 320-21 (2d Cir. 2005) (citations omitted).  Here, the Section 440 court's

determination that trial counsel was not ineffective was objectively reasonable.

Therefore, this claim does not provide a basis for habeas relief.

Hale also contended that defense counsel conducted only one legal visit with him, but counsel's voucher reveals that they spoke by phone twice and met in-person twice, on one occasion for nearly two hours. *See* Dkt. 19-1 at 20. Hale did not offer any evidence as to why more visits would have impacted the outcome of the trial. Defense counsel also delivered an adequate summation despite minor misstatements, and counsel's decision not to focus heavily on inconsistencies in the testimony was not unreasonable. Hale, therefore, has not met his burden of showing that the lower court's decision was objectively unreasonable.

Furthermore, according to the voucher and affirmation, defense counsel spent a number of hours reviewing the video and audio evidence, as it was being provided to him by the prosecution; he also showed portions of the video to the jury and referenced the video in his summation. Dkt. 19-19 at 22, 24, 26, 28, 30. Because the shooting was not actually caught on video, the footage was of limited relevance to the trial. Defense counsel also could not have discovered that Jackson made a statement containing the word "blick" or inferred that "blick" was the missing word until the recording and documentation were produced by the prosecution during trial. Dkt. 19-1 at 21. At that point, defense counsel attempted to locate Jackson, but as previously discussed, Jackson appeared to have no interest in testifying.

Hale also argues that defense counsel pushed two conflicting trial strategies concurrently, namely, that Hale was not the shooter and that the shooting

was justified. Dkt. 18-1 at 17-18, 46. Hale cited only three cross-examination questions to support his claim that defense counsel pursued the justification defense: (1) one question counsel asked the firearms expert about the mechanics of firing a gun; (2) one question counsel asked the medical examiner about the wound to Campbell's buttock; and (3) one question counsel asked Devers about Hale's emotional state after the shooting. Dkt. 19-1 at 22. Otherwise, defense counsel's argument that defendant did not commit the fatal shooting remained consistent throughout the entire trial, including the lengthy cross-examinations of the two eyewitnesses. Id. at 22-23.

Further, Hale claims that defense counsel failed to review eleven recorded jail phone calls that the prosecution planned to use to impeach him if he testified. According to the voucher, however, counsel spent about nine hours total reviewing the tapes. Id. at 23. Even if defense counsel had reviewed the tapes more extensively to better apprise Hale of his potential exposure on cross-examination, any testimony Hale might have given would be uncorroborated and self-serving in light of the strong evidence against him, even if supplemented by Jackson's testimony. While Hale claims that the jury would have credited his testimony because he pointed out small inconsistencies in Devers and Tucker's testimony, those inconsistencies were minor. See id. at 25-26. Other aspects of Hale's proposed testimony would not have been enough to show that his testimony would have affected the outcome of the trial. Defense counsel also had no reasonable basis to request the missing witness charge, accomplice-in-fact

charge, or adverse inference charge at issue.  Failing to make a meritless request does

not satisfy the *Strickland* test, *see Harrington*, 689 F.3d at 130, and therefore cannot be the

basis for habeas relief.

       Hale raises two issues with respect to his warrantless arrest.  First, Hale

faults counsel for failing to allege more vigorously a violation of *Payton*, based on the

fact that he was arrested without a warrant at an apartment which he frequented.

Under *Payton*, the police are "prohibited from entering a suspect's home without

consent and making a routine arrest without a warrant."  *Alexander*, 888 F.3d at 635.

Under New York law, *Payton* has been extended to include other places where a

defendant has a "legitimate expectation of privacy."  *See, e.g., People v. Hornedo*, 759

N.Y.S.2d 84, 84 (2d Dep't 2003).  Thus, a court must engage in a fact-intensive inquiry to

determine whether a defendant has the requisite expectation of privacy needed to raise

a *Payton* violation.

       In support of this argument, Hale claims in his Petition that he had

frequented his girlfriend's home for years, they had moved into the apartment together

and had lived together on a prior occasion, and he had a say in who could enter the

apartment.  Dkt. 18-1 at 42-43.  Hale also admitted, however, to not receiving mail at

that address, nor was it listed as a known address for Hale for the preceding 12 years.

*See* Dkt. 19-5 at 103.  In light of this, it is difficult for Hale to show that defense counsel

rendered deficient performance in failing to pursue the alleged *Payton* violation more

vigorously or that pursuing it would have affected the outcome.  *Payton* does not render

his arrest invalid, and the hearing court determined there was probable cause for the

arrest at a subsequent hearing.  Dkt. 19-1 at 35.  That determination is entitled to

deference.

Hale also argued that defense counsel should have challenged the use of a

GPS device on Hale's phone to track his location.  Dkt. 18-1 at 42-43, 48.  At the time of

Hale's trial in 2012, however, the law was unsettled as to whether a defendant had any

Fourth Amendment rights regarding cell-site metadata.  Dkt. 19-1 at 36.  It was not until

2018 that the Supreme Court held in *Carpenter v. United States*, 138 S. Ct. 2206 (2018),

that a warrant was necessary to obtain cell-site metadata.  Therefore, defense counsel's

performance was not insufficient for failing to challenge the use of that metadata.

For all these reasons, the Appellate Division's finding that Hale's

contentions regarding these arguments were not sufficient to prevail on an ineffective

assistance claim was not unreasonable.  As a result, this claim provides no basis for

federal habeas relief.

3.   *The Brady Violation Claim*

With respect to the alleged *Brady* violation, the Appellate Division held

the trial court "properly determined that the prosecution did not commit a *Brady*

violation by failing to timely disclose the identity of one of its witnesses who was the

subject of the protective order, as there was no reasonable possibility that such

nondisclosure affected the outcome of the trial." *Hale I*, 39 N.Y.S.3d at 485 (citations omitted).  This ruling is entitled to deference and was entirely reasonable.

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87 (1963).  Such evidence need only be disclosed if there were a reasonable probability that its disclosure would have altered the result of the proceeding.  *See Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995); *see also United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("mere possibility" that undisclosed information "might have" helped the defense or affected the outcome of trial does not establish materiality); *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (new trial generally not required when testimony of witness who would have been impeached by withheld evidence is "corroborated by other testimony" or where suppressed material "merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable" (citation omitted)).

Here, Hale maintains that the prosecution violated its *Brady* obligations by not informing the defense of alleged "inducements" it provided Devers and Tucker to get them to testify.  *See* Dkt. 19-1 at 37.  Hale contends that the prosecution did not disclose that it bought plane tickets for Devers and a companion so that Devers could travel from out of state to testify, as well as that Tucker received money from the prosecution for a hotel and food, and he could have potentially received two hundred

dollars once the trial ended. *See id.* Hale infers that the prosecution paid Devers in exchange for her testimony based on the fact that she traveled with a companion who had no relation to the case. *Id.* at 38-39. Hale's allegations regarding Tucker are based on the facts that (1) law enforcement did not arrest Tucker on open warrants during the case, and (2) Tucker received funds after speaking to law enforcement regarding Hale's case. *Id.* at 38.

As the Section 440 court held, however, "the record is devoid of any promises or benefits made to the People's witnesses[,] and defendant's unsupported and conclusory allegations to the contrary cannot sustain the claim." Dkt. 19-24 at 4. This ruling is entitled to deference and does not provide a basis for habeas relief.

Lastly, Hale claims that defense counsel might have pressed Devers as to whether she was testifying because she was under the threat of arrest if the defense counsel had known about the existence of the payments. *See* Dkt. 19-1 at 39. When asked directly at trial if she had been threatened with arrest, however, Devers testified, "No sir" and "Not that I recall." Dkt. 19-1 at 39-40. Procuring plane tickets to enable Devers to attend the trial in New York, without more, does not cast significant doubt on the veracity of her testimony.

Accordingly, this claim fails.

4.      *The Interruption of Summation Claim*

While it did not expressly address Hale's argument about the trial court's interruption of defense counsel's summation, the Appellate Division did hold that "[u]pon reviewing the record, we are satisfied that the verdict of guilt was not against the weight of the evidence" and that the other arguments Hale raised in his brief, including the argument about the summation, were "without merit." *Hale I*, 39 N.Y.S.3d at 485. The court's ruling in this respect was reasonable and entitled to deference.

Hale maintains that the trial court deprived him of due process and his right to present a defense by interrupting his lawyer's summation and accusing the lawyer of misstating the record in front of the jury. Dkt. 19-1 at 40. As criminal trials must be "conducted within the bounds of fundamental fairness," a judge "should take part where necessary to clarify testimony and assist the jury in understanding the evidence." *Gayle v. Scully*, 779 F.2d 802, 805-06 (2d Cir. 1985). The trial court here did not exceed its authority.

The trial court interrupted defense counsel's summation to prevent counsel from giving the jury the impression that Devers had actually testified about how Hale held the gun and whether she had seen the first shot at all. *See* Dkt. 19-1 at 41. Further, the court allowed defense counsel to read to the jury an extended excerpt from his cross-examination of Devers to clarify Devers' testimony, which the jury was then able to evaluate. These actions were reasonable.

Hence, this claim provides no basis for federal habeas relief.

*CONCLUSION*

Hale has failed to show a basis for relief under 28 U.S.C. § 2254.

Accordingly, the Petition is denied.  Additionally, I decline to issue a certificate of

appealability because Hale has not made a substantial showing of the denial of a

constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. §1915(a)(3), I certify that

any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this

case.  The Clerk shall also mail copies of this memorandum decision and the judgment

to Hale at his last known address.

SO ORDERED.

Dated:      New York, New York
            October 2, 2023

_____
DENNY CHIN
United States Circuit Judge
Sitting by Designation